13-4389 Digeronimo Aggregates LLC v. Michael Zemla et al. Oral argument, 15 minutes per side. Mr. Steele for the appellant. Good morning. Good morning. May it please the court, Shaler Steele arguing on behalf of Digeronimo Aggregates LLC. This case stems from, oh, I'm sorry, I'd like to reserve three minutes at the end for rebuttal. Very well. This case stems from the longstanding mismanagement of a multi-employer pension plan that resulted in a materially increased withdrawal liability for Digeronimo Aggregates. The issue in this case is how an employer exercises a standing they've expressly been given under Section 4301A of ERISA when Section 4301A of ERISA is silent as to how an employer can bring a cause of action. Our contention is that because Section 4301A provides only standing and does not provide any substantive cause of action, the only way that Section 4301A can make sense in the statutory scheme is for federal common law to be incorporated into it. So you want us to establish a federal common law cause of action in favor of a contributing employer for negligent mismanagement of the plan? Correct. Has any other court recognized such a cause of action? There is not a court that's recognized a negligence cause of action. Do you think that's significant that no court anywhere has recognized the cause of action you abdicate today? I don't because the landscape has changed. The Multi-Employer Pension Plan Amendment Act was enacted in 1980. Fortunately, in the 35 years since that date, withdrawal liability has not been a material risk to many union contractors over that period of time. You don't think this situation has ever occurred before? I think that there's obviously been economic highs and lows, but there's never been a perfect storm like there's been in the past three years with interest rates being low, asset values being down, that has brought forth the negligence and the mismanagement that's happened in these plans. And I do think the plaintiff's pool has been relatively small. I think it's also important to note, which ties into the standard that this court has put forth, that Section 4301A is inherently ambiguous. The Supreme Court has been fairly clear in Bay Area Laundry that it is only a standing statute and it does not confer a substantive cause of action on employers. So when you take that small pool of plaintiffs that we've had over the past 30 years and we apply the fact that this is a confusing and fairly ambiguous statute, I think that the fact that there hasn't been this type of cause of action in federal court routinely is not an indication of the merits of the claim, but rather an indication... Not routinely, just never. Well, the idea of incorporating federal common law into 4301A is not novel. That's happened before in the Third Circuit in Coulthard v. Derry. I mean, there's some limited situations there. But, I mean, establishing a cause of action for negligence in favor of a contributing employer, I mean, you would just think that that would have come up since 1980 if that was intended by Congress. Well, again, this would require an employer to not only be aggrieved and have a withdrawal liability, but also have experienced a withdrawal to trigger that withdrawal liability. So when you put all that together, I think you have a very narrow pool of plaintiffs and that combined with the fact that Section 4301A is inherently confusing and ambiguous and is silent as to what types of cause of actions can be brought, I think that explains it as opposed to the idea that there's somehow no merit just because nobody's brought the claim. So cases have addressed issues for where there was some type of fraud involved, but none of them have gone so far as to create this cause of action for negligence. Isn't that, as Judge Griffin said, isn't that, in your view, significant? Again, I don't think the fact that employers haven't alleged this before is any kind of commentary on whether this is a cognizable claim. I think that the fact of the matter is that 4301A was specifically put in when the withdrawal liabilities were put in in 1980 to address tortuous acts and adverse effect that could happen with respect to withdrawal liability. So you're saying, I mean, in order to maintain this claim, there would have to be some type of express duty of care which has been breached by the plan administrator or the employer, correct? Trustees. The trustees, right? And it would be an ordinary standard of care. Okay. No heightened standard or anything? No heightened standard. It would be an ordinary standard of care. We understand that the burden on us would be significantly greater than it would be if this were, say, a fiduciary case, as they claim. It's a back door and road to that result. It's not. We understand that we have a heightened burden and that it would be an ordinary standard of care, not a heightened standard of care. This would result in a lot more litigation under ERISA, would it not? Again, I think that two things. One is that for this type of litigation to come up, there would have to be an injury, and the injury would only happen if there's a withdrawal. I don't think that there would be a race to withdraw from these plans and take millions of dollars of liability on employers' balance sheets simply so they could get into the courthouse on the hope that they could prove negligence to try to mitigate a portion of that withdrawal liability. So do I think that it would open up and create a level playing field for employers versus trustees going forward? Yes, I do. Do I think that it would open up the floodgates for litigation? No, I don't, because I don't think that the economics of it would favor employers to go out and trigger these withdrawal liabilities to then go and incur the cost of litigation to try to get a piece of that mitigated based on whatever piece was caused by the tortious actions. Counsel, you began your argument with the statement that the landscape has changed in this area. I took it as a suggestion that that might have some effect on our decision as to whether to recognize a cause of action in the absence of congressional endorsement of it. What did you mean by that? What I mean, the question that was asked was, why has this not come up in the past? Why has nobody ever made this argument before, and is that an indication that somehow this is a frivolous argument or some argument that doesn't hold water? My point there is to say that there's a lot of factors that go into the amount of the underfunding and the amount of withdrawal liabilities. What's changed? What I would say is the mismanagement has not changed. The mismanagement has been there. But just like any defined benefit pension plan, it's a bit of, and I hate to use the word, but a bit of a Ponzi scheme in that you're always borrowing from Peter to pay Paul. And so as long as you can keep that going, the mismanagement may not come to the forefront. The economic recession and depression of 2008, the fact that interest rates are low, the fact that union membership is low and union contracts are, generally speaking, in decline, that has all brought this to the forefront. And I think it is an appropriate time to now look and say, is there something that could have been done and should there have been something that could have been done over the past however many years to manage this? Congress has created specific causes of action for beneficiaries, perhaps others, but not for employers. And I guess what I'm struggling with is if Congress obviously could well have anticipated that there could be a cause of action for employers who suffer as a result of mismanagement, but they didn't create any cause of action. I would say this. Can we make an inference from their failure to create it that they didn't intend to? Under Section 502 of ERISA, you're correct, that Congress expressly provided substantive causes of action for participants and beneficiaries. The key point here is that Section 4301A gives standing to employers. For the first time ever, when withdrawal liability rules were put into place, there was a recognition that now employers could actually be aggrieved and they should have a cause of action. And so they were given standing, but there was no substantive cause of action listed, which is why the Coulter-Yonderi Court created this. And it applies. I think it's important to define the standard this court has set forth. And it's been set forth a couple different ways. The first way it was set forth was in Mahoning National Bank. And in that case, this court said that incorporating federal common law is a balancing act, that there has to be a statutory host, but the federal common law cause of action can't substitute for an expressly provided statute. That's to your point. This case falls right at the fulcrum of that balancing act because Section 4301A provides that statutory host. It contemplates that an employer could bring a cause of action and should be able to bring a cause of action with respect to adverse effect with respect to withdrawal liability. But because they didn't list anything, it doesn't expressly substitute for a remedy that was provided by Congress. And I think that ties into the congressional intent. Senator Javits, who was the sponsor of both ERISA and the Multi-Employer Pension Plan Amendment Act that added the withdrawal liability rules, came out and said on many occasions that there's going to be gaps and there's going to be gaps that were intentionally left in ERISA and that they want the federal courts to fill in those gaps because they don't know how this is going to be applied over time. And I think that in 1980, when this was created, I don't think they understood how this was all going to play out. And so they left it intentionally blank for the courts to fill in, and that's no different than what the Coulter-Young court did and came down on that side and said, we have to fill in the blank here, otherwise we have a situation where we have a standing granted to an employer and absolutely no mechanism for that employer to exercise that standing. That's not only an awkward result, it's an impossible interpretation of the statutory scheme in our estimation. That brings me back to the standard that this court has put forth. Well, you do have a remedy for fraud and for some equitable accounting. I mean, you want a remedy for negligence. You do have standing for certain things, don't you, the employer? A contributing employer under Section 502 has no express statute granted. No express statute. Correct. You're talking about the common law remedies that have developed. One is for fraud, right? Fraudulent inducement. Fraudulent inducement. That's correct. It's not that there's a standing provision without anything. I mean, there are causes of action that apply to the standing. It's just whether they should also include negligence. What I was saying is the standard that's been put forth by the court in Mahoning and then later codified in Local 6-0682 talks about having a statutory host but not having an express statutory remedy that's been given. So what we're talking about here is saying that Section 4301A provides standing, but there is no statutory cause of action that can be given, and therefore that gap has to be filled in by federal common law. The normal rule is that we're somewhat reluctant to establish federal common law remedies when Congress has acted in the area. I mean, that's just the general rule, is it not? The general rule is that the federal court should exercise restraint so as not to supersede or substitute for what ERISA has expressly granted causes of action. I think it's very critical to recognize here that the civil remedies that were put in place with respect to withdrawal liability were put in 4301A under Bay Area Laundry. The Supreme Court has come out and said it is only a standing statute. It is not a substantive cause of action. So there has to be some way that employers can exercise that standing, and there is no statutory cause of action that's been granted to that, which is why it has to be filled in by federal common law. And that's our argument as to why our case falls right at the intersection of what Congress contemplated when it drafted the statute and why we need to fill in the gap so that 4301 has some meaning and isn't just an inkblot on a piece of paper. I guess then is your argument, well, since the federal courts created the fraud remedy without Congress's express sanction, why not a negligence remedy? I think the rationale for why they created the fraudulent inducement remedy is applicable in this case, yes. They talk about the fact that Congress granted the trustees enormous power to manage these funds and have somebody else pick up the tab. And there's no way that they gave that kind of power and that kind of discretion to trustees without there being some kind of check on that power. And what we're arguing is that it doesn't just have to be in the extreme case of fraudulent inducement where there's an actual fraud committed, that that should apply. If Congress intended 4301 to be interpreted that narrowly, that it was only going to be applied to cases of fraud or cases of extreme, whatever it may be, then I think they would have given us a road map. When they leave it broadly open, I think they're saying that the federal courts in their discretion need to fill in the gaps and where there's been an injustice done, they need to provide a remedy for the employers. Okay, Mr. Steele, I see you're out of time. You could use your time now or you could... No, I'll save it for rebuttal. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court, I'm Heather Kern, appearing on behalf of Appalese, Michael Zemla, Jack Sedaris, Thomas Terrell, Stephen Eisenberg, Kevin Schroeder, and James Stiegel in their capacities as trustees to the Teamsters Local No. 293 Pension Plan. The Court has indicated that they are familiar with the briefs, and counsel has obviously provided some argument already this morning on the other side, and so I'd like to address some of the points that were raised briefly in the argument that we just heard. The appellant is appealing from an October 25, 2013 order dismissing with prejudice the complaint, which raised one count for seeking to get recognition of a federal common law cause of action under 4301A of ERISA. As the Court has noted, no other court has ever recognized such a federal common law cause of action for negligence by a contributing employer. The multi- Counsel, before the courts recognized a fraud cause of action, no court had recognized a cause of action for fraud, had it? You're correct, and no court had recognized a fraud cause of action before that was recognized. The courts recognized that the recognition of a federal common law cause of action is something that should only happen in extreme circumstances.  No court since then has recognized a similar cause of action. Well, would you agree that negligent mismanagement can cause a harm just as severe as a fraudulent inducement? I would agree that negligent mismanagement may cause harm, and that Congress has provided a remedy for that already. Congress has provided that the trustees... Not for an employer. Correct. Because Congress set up a scheme where the trustees owe fiduciary duties to beneficiaries and participants. That's who the fiduciary duties in ERISA are owed to, and Congress has created a remedy for them in the event of such a breach. The harm here, the adverse effect that the employer is complaining of, is that it has been assessed withdrawal liability in the event of a plan being underfunded. Well, that's precisely what the Multi-Employer Pension Plan Amendments Act was designed to do. It was designed to make sure that in the event that there was underfunding of a plan, that the employers would have to contribute to that. And it did that to stabilize plans. My colleague talked about a change in the landscape. So should the employer bear the entire cost of that underfunding, even if it was caused by the negligence of the trustees? Well, in effect, what the employer is saying is that the trustees erred by not charging the employers more, or not requiring the employers to contribute more during the pendency of the plan and while they were in the plan. And so really it's an issue of, well, you should have charged us then, and so now you can't charge us now. The issue is that there's an underfunding that exists. And so whether the underfunding, regardless of the reason of the underfunding, and here the argument, or at least what the allegations are, is that the underfunding was caused by, again, ratifying rates that were negotiated by the union and the employer as to what should be contributed. And the complaint is that the trustees ratified those rates, resulting in underfunding. My colleague has talked about a change in the landscape, all the causes that have contributed to the fact that there are underfunding in a lot of these multi-employer pension plans. Okay, but what – I understand your argument, but what relief should be accorded, if any, to the employer in this circumstance? In this circumstance, I don't believe the employer is afforded. I think if the employer believes that it should be afforded a remedy, that that is an issue for Congress to address, and Congress has not addressed it. Congress expressly allowed for plan participants and beneficiaries to complain about breaches of fiduciary duty having to do with financial management of plan assets. Even though Congress didn't provide the fraud remedy, and the courts recognize that, why isn't this similar to that situation? The issue of fraud is treated differently, as we all know, in a lot of different circumstances. I mean, there are exceptions for fraud in a lot of instances. And the Coltrane case was a very specific case in which the employer was fraudulently induced to join into or agree to have their plan joined with another plan based on concealment, active concealment effects. That's a different circumstance than negligence. And, again, the fiduciary – I understand their difference, but I'm talking about – you say, well, the employer should not be accorded any relief because Congress didn't provide for it. But the fact that Congress didn't provide for it didn't prevent relief in other circumstances. So I don't see the distinction you're making. Okay. And I'm saying that I think fraud is a different case. I think that – and I think fraud wasn't addressed overall in ERISA, whereas, again, mismanagement of plan assets was addressed with the fiduciary duties that are afforded to – by the trustees to plan beneficiaries and participants, and that there's a remedy for that in the statute. As has been discussed already this morning, there is no basis here for recognition of a federal common law cause of action. The statute isn't silent, as we just discussed. In fact, it does provide a remedy for the mismanagement of plan assets, but that remedy does not go to contributing employers. There's no fundamental ERISA policy that my colleagues identified that would be furthered by recognizing this federal common law cause of action. And, in fact, this is really an effort, as we've talked about, to circumvent the statutory scheme that exists, whereby the breach of fiduciary duty is one that flows to participants and beneficiaries. The trustees have always exerted their efforts to make sure that they were protected, and that's what ERISA was designed to protect. ERISA was designed not to make sure contributing employers were okay, but to make sure that people's benefits were there when they needed them, that their promised benefits would be there at the end of the day. And the way they did that, when they saw this issue, they saw an issue – people fleeing from plans in order to avoid withdrawal liability. They assigned that withdrawal liability expressly to contributing employers. In the event of underfunding, contributing employers were supposed to be the ones to fill that gap. That's the whole point of the statute. And so that is why the remedy that the appellant seeks is not one that's provided for. It makes sense that it's not one that's provided for. That wasn't the purpose of the statute. The purpose of the statute was to protect the participants and the beneficiaries by making the employers liable in the event of underfunding. If there are no other questions. I have none. Any further questions? Judge Graham? Thank you. All right. Thank you, Ms. Kern. Rebuttal, Mr. Steele? Yes, I'd like to just talk on a couple points there. I think the primary thing I want to address is that my colleague just said that the entire intent of the Multi-Employer Pension Plan Amendment Act in 1980 was to create this withdrawal liability scheme. And the fact that de juronimo aggregates has been assessed withdrawal liability goes to the entire intent and doesn't create some awkward gap in the statutory scheme. With respect, that shows a fundamental lack of understanding of the claim that's in front of this court. That's an excellent point and anticipates my question. Counsel has suggested that the problem that your client experienced is simply the consequence of the federal act imposing liability on employers, period, for this kind of underfunding. What do you say about that? Isn't that the case? There's no question that the sections 4201 through sections 4219 of ERISA provide for the statutory scheme for withdrawal liability to be calculated and assessed. We absolutely agree with that. We are not challenging the assessment of withdrawal liability. We understand that we owe $1.8 million to the pension plan. We are not challenging that. What section 4301A tells us is that when we get assessed the withdrawal liability and our harm is withdrawal liability, if there is a malfeasance going on somewhere that has materially caused that withdrawal liability, we have a right to pursue that party for relief. Except for the fact that just as Congress anticipated, there aren't enough employees to make contributions anymore. Well, I think that's also an oversimplification of our claim to say that we are only basing this on the fact that the contribution rates were too low. What did they do wrong? The contribution rates were too low. That's true. We think that there was a mismanagement of plan expenses over time, that plan expenses were not reasonable. We think that investments were not managed reasonably. We think that benefits were too robust over time. There were massive increases in benefits over time that weren't supported by the contribution rates. There's a lot that goes into making sure that what goes into the plan is sufficient to come out of the plan. And that wasn't done appropriately. And if you don't do that appropriately, it's not the economic climate that is going to ultimately get you. Eventually, if you're not putting in enough and not taking care of it the right way to support what's coming out the other end, you're going to end up with an underfunding and you're going to end up with an insolvent plan. It's just the math. And that's what happened here. And it wasn't simply one factor. It was a lot of factors. We pled it that way. And to say that we're just trying to shift the payment from the front end to the back end is just not – it's a misstatement of our claim and just not true. The last thing I'd like to say is to the point of participants and beneficiaries having a remedy under 502. Participants and beneficiaries don't get harmed by withdrawal liability. It doesn't go on to them. We're talking about a different harm. 4301A was put in when the withdrawal liability rules were put in solely because now employers were going to have a harm that was separate and distinct from a harm that a participant or beneficiary could experience. So the fact that they can sue under 502 for a separate cause of action for a separate harm has nothing to do with 4301A and how we exercise the standing that we were expressly granted under 4301A. And we do think it's a congressional intent to allow us to explore this claim. And we understand that we have, to your point, have a higher burden to prove. We're just looking to prove it. And we're looking for this court to – we think the district court erred in not giving us that opportunity. We're looking for this court to overturn that decision, allow us to explore that, and be able to prove to you that, to your point, that this wasn't a small matter. It was gross negligence that caused our withdrawal liability. And they should be liable to us for the piece of it that they caused. Thank you. Thank you. All right, case will be submitted. I'll call the next case.